**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHRISTOPHER CHARON,<br>*Plaintiff*,<br>v.<br>ANASAZI GROUP LLC, *et al.*,<br>*Defendants*. | Civil Action No. 25-430 (SLS)<br>Judge Sparkle L. Sooknanan |

# MEMORANDUM OPINION

Christopher Charon worked at the Graham Hotel Georgetown for roughly seven months before the hotel fired him. He brought this lawsuit under the District of Columbia Human Rights Act (DCHRA) alleging a hostile work environment, discrimination, and retaliation. At the motion-to-dismiss stage, the Court dismissed most of Mr. Charon's claims, leaving only his retaliation claim. The Defendants now move for summary judgment on that claim. For the reasons below, the Court grants the motion. On this record, no reasonable jury could conclude that Mr. Charon's termination was retaliatory.

## BACKGROUND

### A. Factual Background

The Court draws the facts from the Parties' Statements of Material Facts and the underlying materials referenced in those statements. *See* Defs.' Statement of Undisputed Facts, ECF No. 17; Pl.'s Statement of Material Facts in Dispute, ECF No. 24-2; Joint Statement of Undisputed Facts (JSOF), ECF No. 27. The Court assumes the facts in those statements to be true unless they have

been specifically disputed, and it assumes the truth of other undisputed statements in the record. *See* Fed. R. Civ. P. 56(e)(2); *see also* LCvR 7(h)(1).[1]

In October 2023, Mr. Charon joined the Graham Hotel Georgetown as Operations Manager. JSOF ¶ 1. The Anasazi Group, LLC, which operated the hotel, formally employed Mr. Charon. JSOF ¶ 6. Mr. Charon is openly gay. JSOF ¶ 2.

In March 2024, Moore Dolue, the hotel's financial controller, JSOF ¶ 8, sent a password reset email to the only other openly gay employee with a temporary password consisting of a homophobic slur, "fag," followed by the employee's identification number, JSOF ¶ 14; Password Reset Email Threads at 3, Defs.' Ex. 12, ECF No. 17-12; Charon Dep. at 131:8–12, Defs.' Ex. 1, ECF No. 17-1. That employee forwarded the email to Mr. Charon, who later reported the incident to Brian Friedman, the hotel's owner, during a dinner. JSOF ¶ 15; Charon Dep. at 156:13–15, 171:8–22; EEOC Intake Notes at 2, Defs.' Ex. 15, ECF No. 17-15. Mr. Charon did not ask Mr. Friedman to investigate the matter. JSOF ¶ 20.

Meanwhile, Mr. Charon was involved in a series of disputes with other hotel employees. One staff member reported that she "no longer fe[lt] comfortable interacting with" him, and another found him "obnoxious," Email Threads at 2, 10, Defs.' Ex. 17, ECF No. 17-17. By the end of March 2024, the hotel's management had prepared a draft letter terminating Mr. Charon's employment because of "insubordination towards [his] supervisors and other members of the management team." Draft Termination Letter at 3, Defs.' Ex. 18, ECF No. 17-18. But ultimately, management elected not to move forward with termination because they were enlisting a third-

[1] Local Rule 7(h) provides that "the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1).

party management company to oversee the hotel group—a process that would eventually lead to employee separations. JSOF ¶ 40; *see* Zimmerman Dep. at 52:4–22, Defs.' Ex. 8, ECF No. 17-8.

On May 9, 2024, the Anasazi Group terminated Mr. Charon's employment. JSOF ¶ 45; Termination Letter at 2, Defs.' Ex. 21, ECF No. 17-21. The letter stated: "As you are aware, The Anasazi Group has engaged the services of a third-party management company to provide essential services to its hotels located in the Washington D.C. area. As a part of this restructure, your employment with the Anasazi Group is being terminated." JSOF ¶ 46; Termination Letter at 2.

### B. Procedural Background

In January 2025, Mr. Charon filed this lawsuit in the Superior Court of the District of Columbia, naming the Anasazi Group, LLC and the Graham Hotel Georgetown, LLC as the Defendants. Compl. ¶¶ 6–7, ECF No. 1-1. Mr. Charon's Complaint alleged that the Defendants violated the DCHRA, D.C. Code § 2-1401.01 *et seq.*, by subjecting him to a hostile work environment, wrongfully terminating him, and retaliating against him for engaging in protected activity. Compl. ¶¶ 34–74. The Defendants removed the case to this Court, *see* Notice of Removal, ECF No. 1, and moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot. Dismiss, ECF No. 7. The Court granted that motion in part and denied it in part, dismissing Mr. Charon's hostile work environment and wrongful termination claims, but permitting his retaliation claim to proceed to discovery. *Charon v. Anasazi Grp. LLC*, No. 25-cv-430, 2025 WL 2591785 (D.D.C. Sep. 8, 2025); Order, ECF No. 12. With discovery concluded, the Defendants now move for summary judgment on Mr. Charon's retaliation claim. Defs.' Mot. Summ. J. (Mot.), ECF No. 17. That motion is fully briefed and ripe for review. *See* Pl.'s Opp'n (Opp'n), ECF No. 24-1; Defs.' Reply, ECF No. 26.

## LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). To defeat summary judgment, the nonmovant must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (cleaned up). In considering a motion for summary judgment, a court "may not make credibility determinations or otherwise weigh the evidence." *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016). Instead, it must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* Summary judgment is appropriate only if, viewing the evidence in that light, the court concludes that no reasonable jury could find for the nonmovant. *Steele v. Mattis*, 899 F.3d 943, 947 (D.C. Cir. 2018).

## DISCUSSION

At this stage, what remains of Mr. Charon's DCHRA suit is a single retaliation claim. That claim does not survive summary judgment. On this record, Mr. Charon has not established protected activity to make out a prima facie case of retaliation. And even if he had, his claim would fail because he does not establish that the Defendants' nonretaliatory reasons for his termination were pretextual.

### A. Statutory Background

The DCHRA makes it unlawful "to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed . . . any right granted or protected under" the Act. D.C. Code § 2-1402.61(a). DCHRA retaliation claims are generally analyzed in the same manner as claims arising under Title VII of the Civil Rights Act of

1964.[2] *Bryant v. District of Columbia*, 102 A.3d 264, 268 (D.C. 2014). And Title VII "retaliation claims are subject to the familiar, burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)." *Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015).

A DCHRA plaintiff must thus make out "a prima facie case of retaliation[]" by establishing that "(1) she was engaged in a protected activity, or that she opposed practices made unlawful by the DCHRA; (2) the employer took an adverse personnel action against her; and (3) a causal connection existed between the two." *Howard Univ. v. Green*, 652 A.2d 41, 45 (D.C. 1994); *see also Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (laying out an identical framework in the context of Title VII retaliation claims). If the plaintiff establishes the requisite prima facie case, "the burden shifts to the employer to identify the legitimate, non-discriminatory or non-retaliatory reason on which it relied in taking the complained-of action." *Walker*, 798 F.3d at 1092. "Assuming the employer proffers such a reason, the central question at summary judgment becomes whether the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory or non-retaliatory reason was not the actual reason and that the employer intentionally discriminated or retaliated against the employee." *Id.* (cleaned up).

---

[2] The D.C. Court of Appeals recently declined "to follow the Supreme Court's approach to Title VII retaliation claims when determining what standard to apply to DCHRA retaliation claims," holding that unlike Title VII retaliation claims, a plaintiff alleging unlawful retaliation under the DCHRA need not show but-for causation. *District of Columbia v. Bryant*, 307 A.3d 443, 448, 456 (D.C. 2024), *reh'g denied* (Sep. 27, 2024). But here, Mr. Charon agrees that Title VII's "analytical framework" applies to his DCHRA claim, Opp'n at 5, thus conceding any argument that it should be analyzed under a different standard, *cf. Strong v. Fort Myer Constr. Corp.*, No. 25-cv-1011, 2025 WL 2643457, at *2 n.2 (D.D.C. Sep. 15, 2025). And in any event, the Court need not address causation because Mr. Charon has failed to show that he engaged in protected activity.

### B. Prima Facie Case

Mr. Charon's prima facie case of retaliation fails at the first prong. Mr. Charon must first show that he "was engaged in a protected activity, or . . . opposed practices made unlawful by the DCHRA[.]" *Green*, 652 A.2d at 45. On this record, he has not made that showing, so the Court need not address the second and third prongs.[3]

Under Title VII, "an employee's opposition to an employment practice is protected . . . when the employee "reasonably and in good faith *believed* the practice was unlawful under the statute." *Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 24 (D.C. Cir. 2013) (emphasis in original) (cleaned up). In other words, the employee "must show that she had a reasonable belief the conduct was unlawful." *Id.*; *see also George v. Leavitt*, 407 F.3d 405, 417 (D.C. Cir. 2005) ("We have held that 'an employee seeking the protection of the opposition clause [must] demonstrate a good faith, reasonable belief that the challenged practice violates Title VII.'" (quoting *Parker v. Balt. & Ohio R.R. Co.*, 652 F.2d 1012, 1020 (D.C. Cir. 1981))). "'Good faith' and 'reasonableness' are separate requirements. And while the reasonableness of a plaintiff's belief turns on an objective test, the good faith requirement requires a subjective inquiry into the plaintiff's beliefs and motivations[.]" *Savignac v. Jones Day*, 586 F. Supp. 3d 16, 20 (D.D.C. 2022) (first citing *Grosdidier*, 709 F.3d at 24; and then citing *Monteiro v. Poole Silver Co.*, 615 F.2d 4, 7–8 (1st Cir. 1980)).

[3] Although the Court concluded at the motion-to-dismiss stage that "Mr. Charon engaged in protected activity by complaining about Mr. Dolue's email" and "seeking an accommodation and workers compensation benefits following his fall," *Charon*, 2025 WL 2591785, at *6 (citing Compl. ¶¶ 69–70), that initial determination has little relevance here, particularly because the Defendants' motion to dismiss "d[id] not contest that Mr. Charon engaged in protected activity[,]" Defs.' Mot. Dismiss at 10 n.8.

At summary judgment, Mr. Charon holds out one "protected activity": his complaint to Mr. Friedman about Mr. Dolue's password reset email containing a homophobic slur.[4] As Mr. Charon explained in his deposition, while at dinner with Mr. Friedman, he expressed that he was offended by the slur in the email and that he took it as a "personal slight." Charon Dep. at 156:13–22; 171:13–22. Setting aside whether this dinner conversation was a report that could give rise to a retaliation claim, Mr. Charon fails to demonstrate protected activity for two reasons.

*First*, Mr. Charon does not ever claim that he believed that the use of the slur in the password reset email sent to the other employee violated Mr. Charon's rights or was otherwise unlawful. His eight-page summary judgment opposition is devoid of any such claim, *see* Opp'n at 6–7 (arguing instead that "given the circumstances, a reasonable employee, particularly a gay employee, could have reasonably believed that the conduct by Mr. Dolue was unlawful"), despite this argument featuring prominently in the Defendants' motion, *see* Mot. at 5–7.[5] And as the

[4] The Complaint also alleged that Mr. Charon engaged in protected activity "when he requested reasonable accommodation to work from home and completed worker's compensation documentation," Compl. ¶ 70, which the Defendants' motion for summary judgment addressed, Mot. at 7–8. But in opposing the Defendants' motion, Mr. Charon argued only that he "engaged in the protected activity on April 1, 2024, when he complained to Mr. Friedman about the password reset email with the homophobic slur." Opp'n at 7. Accordingly, he has conceded any argument that his request for an accommodation or his completion of worker's compensation forms constituted protected activities. *See Hopkins v. Women's Div., Gen. Bd. of Glob. Ministrie*s, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004).

[5] Moreover, the Plaintiff's summary-judgment opposition relies almost entirely on allegations from his Complaint. *See* Opp'n at 1–2. "Allegations in a complaint are decidedly not evidence and cannot be relied on by the Court" in ruling on a motion for summary judgment. *Garay v. Liriano*, 943 F. Supp. 2d 1, 20 (D.D.C. 2013); *see also, e.g.*, *Xereas v. Heiss*, 630 F. Supp. 3d 61, 69 (D.D.C. 2022) ("Facts alleged in a complaint are not evidence for the purposes of a motion for summary judgment." (cleaned up)), *aff'd*, No. 22-cv-7140, 2023 WL 7272213 (D.C. Cir. Nov. 3, 2023). And of course, the Plaintiff, as the nonmoving party, "must present affirmative evidence in

Defendant points out, Mr. Charon's deposition testimony suggests that he did not believe that the conduct he complained of was unlawful:

> Q. Did you tell [Mr. Friedman] that you thought what [Mr. Dolue] had done was actually illegal?
>
> A. I didn't remember saying that, I don't know. I don't even know that I thought that at the time. You know, like, again, I knew for a fact, like, this is wrong. I know it's something in that workplace, it is something you cannot do. I did know that. Illegal? I don't know that I would have got there because I'm not a lawyer, as we established earlier, yes.

*Id.* at 256:10–19.

To be sure, to engage in protected activity under Title VII, an employee need not know for certain that conduct was unlawful at the time of her complaint. The law does not impose that burden on Title VII plaintiffs. *See Lott v. Not-for-Profit Hosp. Corp.*, 319 F. Supp. 3d 277, 282 (D.D.C. 2018) ("The employee's 'belief' that the employer's conduct was unlawful need not be certain[.]"); *cf. Parker*, 652 F.2d at 1020 ("[A] layperson should not be burdened with the 'sometimes impossible task' of correctly anticipating how a given court will interpret a particular statute." (citation omitted)). But a plaintiff must demonstrate that she complained of activity that she reasonably believed was unlawful. *See Green*, 652 A.2d at 46 ("[A plaintiff] must show she opposed or complained of activity which she reasonably, in good faith, believed was based on sexual orientation discrimination, and that she so informed the employer."). Here, Mr. Charon neither asserts such a belief nor takes the next step of pointing to supporting evidence. This is fatal to his retaliation claim. *Grosdidier*, 709 F.3d at 24 (a retaliation plaintiff "must show that she had a reasonable belief the conduct was unlawful").

---

order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

*Second*, on this record, any subjective belief would have been objectively unreasonable in light of governing case law. "Where . . . a plaintiff contends that the practices she opposes constitute a hostile work environment, the court must assess whether she could have reasonably believed that "the workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Grosdidier*, 709 F.3d at 24 (cleaned up). To make that determination, courts must "look[] to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008).

Here, a reasonable employee could not have believed that the password reset email, standing alone, created a hostile work environment. The use of any slur in the workplace is repugnant, and the Court does not minimize the deeply harmful history of the homophobic slur used in Mr. Dolue's email. But the email in question was sent by a non-supervisory employee, it was not directed at Mr. Charon, and Mr. Charon did not ask management to investigate it. On these facts, an employee in Mr. Charon's position could not have reasonably believed that the email alone gave rise to a hostile work environment. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (noting that Title VII is not a "general civility code"); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (noting that "offhand comments[] and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'"); *cf. Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (affirming a grant of summary judgment when in light of case law governing Title VII hostile work environment claims, "[n]o reasonable person could have believed that the single incident" involved "violated Title VII's standard"). In some circumstances, such as "the use of an unambiguously racial epithet

such as [the n-word] by a supervisor," a single incident could suffice to establish a hostile work environment. *Ayissi-Etoh v. Fannie Mae,* 712 F.3d 572, 577 (D.C. Cir. 2013) (cleaned up). But this record is not that extreme case. *See Charon*, 2025 WL 2591785, at *4 (distinguishing the facts of this case from those of *Ayissi-Etoh*).

All in all, the lack of protected activity stops Mr. Charon's retaliation claim in its tracks at the first step of *McDonnell Douglas*.

**C. Pretext**

Even if Mr. Charon could get past the threshold prima facie step, his claim would ultimately fail. The Defendants have provided non-retaliatory reasons for his termination and, on this record, no reasonable jury could find those reasons pretextual.

According to the Defendants, "Mr. Charon frequently exhibited contempt and unprofessional behavior toward his supervisors, management, and other employees he did not like." Mot. at 11. And Mr. Charon's termination letter stated that his termination was "part of [a] restructure" by the Anasazi Group transitioning certain hotel functions to a third-party management company. JSOF ¶ 46; Termination Letter at 2; *see* Mot. at 13.

In response to those nonretaliatory reasons, Mr. Charon offers a single paragraph urging that Mr. Friedman, the hotel's owner, offered inconsistent positions regarding the value of Mr. Charon's work to the Defendants. He points to an April 3, 2024, email from Mr. Friedman recognizing that he "ha[d] been invaluable in [certain] situations at the end of March," and predicting that Mr. Charon would "greatly appreciate" the support of the third-party management company following the hotel's intended restructuring. Friedman Email at 3, Defs.' Ex. 10, ECF No. 17-10. Later, in his February 2026 deposition, Mr. Friedman testified that he did not view Mr. Charon as "a valuable employee." Friedman Dep. at 28:3–6, Defs.' Ex. 13, ECF No. 17-13.

Mr. Charon's claim of pretext does not pass muster. First off, Mr. Charon acknowledges that Mr. Friedman did not "ma[k]e the ultimate decision to terminate" his employment. JSOF ¶ 47. So it is difficult to see how any inconsistencies in Mr. Friedman's opinion of Mr. Charon's job performance—particularly when expressed nearly two years apart—could demonstrate pretext. Moreover, Mr. Charon makes no attempt to controvert the Defendants' evidence of unprofessional behavior. The record reveals that he accused other employees of sending emails that were "nothing short of unhinged, disrespectful, and antagonistic," Charon Email, Defs.' Ex. 1, ECF No. 17-1, and that other employees "no longer fe[lt] comfortable interacting with" him and found him "obnoxious," Email Threads at 2, 10. "Insubordination is a commonly asserted, legitimate, non-discriminatory reason for taking an adverse employment action." *Hogan v. Hayden*, 406 F. Supp. 3d 32, 44 (D.D.C. 2019) (cleaned up); *see also Smith*, 430 F.3d at 455 (finding an employer's disciplinary actions were non-pretextual when they were instituted "in response to [an employee's] negligence and insubordination (including discourteous treatment of her supervisor)"). And it is undisputed that the Defendants ultimately terminated him through a restructuring of the hotel, JSOF ¶ 46, a fact that Mr. Charon similarly fails to controvert.

In sum, Mr. Charon has offered no evidence whatsoever that the Defendants' reasons for his termination were pretextual. Thus, his DCHRA retaliation claim would fail even if he had established a prima facie case.

## CONCLUSION

For the foregoing reasons, the Court grants the Defendants' Motion for Summary Judgment, ECF No. 17.

A separate order will issue.

SPARKLE L. SOOKNANAN
United States District Judge

Date: November 13, 2026